39282.   MURDOCK v. LEDBETTER-JOHNSON COMPANY.
39283.   ROBERTS v. LEDBETTER-JOHNSON COMPANY.

DECIDED FEBRUARY 28, 1962—REHEARING DENIED MARCH 15, 1962.

552

*Howe & Murphy, Harold L. Murphy, James I. Parker,* for plaintiffs in error.

*Matthews, Maddox, Walton & Smith, John W. Maddox,* contra.

BELL, Judge. The petitions charge the defendant contractor was negligent in three particulars: (1), (2) in not providing signs warning of impending danger nor providing a stop sign at the dead-end intersection; and (3) in constructing a dangerous intersection.

■ By *Code Ann.* § 95-604 there is vested in the State Highway Board and its representatives "exclusive authority and jurisdiction for the erection and maintenance of signs along the highways of this State composing the State-aid system of roads . . ." and this exclusive authority in the State Highway Board and its representatives includes the placing of all signs used as route markers, direction signs, or warning signs.

Where stop signs are to be erected at an intersection, they are to be placed at the nearest line of the crosswalk, or, if none, at

the nearest line of the roadway. *Code Ann.* § 68-1665 (b).

The petitions do not allege that the defendant had any control over the road upon which the plaintiffs were traveling at the time of their entry into Highway 120, which the defendant was resurfacing, and there are no allegations that the defendant interfered with or altered the road upon which the plaintiffs were traveling.

Even were we to construe the petitions most favorably for the pleaders, which, of course, is not the rule we are required to apply, the petitions merely allege that the defendant had the duty to erect signs upon the highway which it had contracted to resurface to protect persons traveling on it. Under *Code Ann.* § 95-604, supra, the authority to erect signs at dead-end intersections to warn persons to stop is vested exclusively in the State Highway Board. The allegations of the petitions are not open to the construction that they assert that the contract transferred this exclusive authority of the State Highway Board to the contractor to erect signs upon a road to which its contract did not extend.

The fact that the defendant had charge of resurfacing the highway did not impose upon it the duty to post warning signs of allegedly hazardous conditions, such as this dead-end intersection without a stop sign, which was in existence prior to the time the company embarked upon its work. "Though a contractor must protect the public from dangerous conditions in the highway resulting from his work, no duty aside from statute is imposed upon him to protect the traveling public against dangerous or defective conditions of the highway caused by others." *Schwarcz v. Charlton County,* 211 Ga. 923, 930 (89 SE2d 881), and authorities therein cited.

The allegation to the effect that the contract required the defendant to provide stop signs at all points and intersections where traffic must be brought to a halt is subject solely to the construction that these responsibilities were required of the defendant only in those situations where the hazards were created by the defendant in resurfacing the highway. While conceivably the State Highway Department could contract with a private enterprise to erect permanent stop signs at designated

places, it could not by contract or otherwise delegate to the discretion of another this exclusive authority to designate the erection of permanent stop signs.

Accordingly, the defendant had no duty or justification to erect stop or warning signs upon the side road over which it had no authority merely because it connected with the highway the defendant had contracted to resurface. A contractor has no authority, control, or responsibility over public ways outside the boundary of its contract provisions. See generally, Howard v. Knutson, 229 Mo. App. 267 (77 SW2d 158); and Austin v. Schmedes, 154 Tex. 416 (279 SW2d 326).

No cause of action is stated against the contractor in these petitions because of its failure to erect a stop sign or other warning signs, where it had no authority to do so.

■ The general allegation in the petitions charging that the defendant was negligent *in constructing* a dangerous intersection is in conflict with the express allegations that the defendant's contract was for *resurfacing the highway*. The necessary and reasonable implication from this allegation is that the highway had previously existed as had the intersection into it of the other road upon which plaintiffs were traveling. Moreover, the allegation that defendant had graded a large ditch on the south side of the highway does not support the charges of constructing a dangerous intersection. From the petitions it is apparent that this ditch was on the side of Highway 120 opposite from the point where the plaintiffs' car entered the intersection.

The proximate cause of plaintiffs running into the ditch was the failure to stop at the dead-end intersection which they entered, crossing the highway upon which the defendant was working, and running into the ditch on the far side. The presence of the ditch was a static condition upon which the plaintiff driver's negligence operated to cause the injuries to the two plaintiffs.

The petitions charge that defendant graded and constructed a ditch at the intersection so that the bank on the south side was lower than the surface of Highway 120. It is a matter of common knowledge that banks of highways are usually either lower or higher than the road itself. The mere act of making the bank of the highway lower than the highway is not negligence.

The bank must be lower or a drainage ditch must be constructed, otherwise water would remain upon the highway to imperil travelers.

The trial court did not err in sustaining the general demurrers to the petitions.

*Judgments affirmed. Felton, C. J., and Hall, J., concur.*